United States District Court

For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

RICHARD ALDERETE,                    )    No. C 04-1332 SBA (pr)
                                     )
            Plaintiff,               )    **ORDER GRANTING DEFENDANT**
  v.                                 )    **JADERBORG'S MOTION FOR**
                                     )    **SUMMARY JUDGMENT**
JANA JADERBORG, M.D.,                )
                                     )
            Defendant.               )    (Docket No. 12)
_____      )

## INTRODUCTION

Plaintiff Richard Alderete (hereinafter "Plaintiff"), a state prisoner incarcerated at Pelican Bay State Prison (hereinafter "PBSP") in Crescent City, California, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against contract physicians hired by PBSP for deliberate indifference to Plaintiff's serious medical needs.

After an initial review of the complaint, the Court found that Plaintiff had stated a cognizable deliberate indifference claim against Dr. Jana Jaderborg, but that he failed to state a cognizable claim against the remaining named defendants in his complaint, Drs. James Holmes, Kathleen Adams, Gene Babbit and Eric Tsao. Consequently, Plaintiff's claims against these latter defendants were dismissed with prejudice.

Plaintiff alleges that Dr. Jaderborg acted with deliberate indifference to his serious medical needs related to the diagnosis and treatment of his severe abdominal pain, which was ultimately diagnosed as biliary dyskinesia.[1] He alleges that Dr. Jaderborg was aware or should have been aware of diagnostic tests which would have resulted in proper diagnosis and treatment of his abdominal pain.

Dr. Jaderborg now moves for summary judgment on the grounds that there are no triable issues of material fact, and that, in fact, Dr. Jaderborg provided to Plaintiff proper and appropriate care within the standards of the general surgical community, thus necessarily defeating Plaintiff's Eighth Amendment claim. Further, Dr. Jaderborg argues, Plaintiff's alleged damages were not the result of any deliberate or

---

[1] "[B]iliary dyskinesia is also a condition or disease of the gall bladder, but caused specifically by the inability of the gall bladder to empty in a normal, non-symptomatic fashion." (Jaderborg Decl. in Resp. to Opp'n of Pl. to Mot. for Summ. J. ["Jaderborg Resp."] ¶4.)

negligent act, or omission on the part of Dr. Jaderborg.  Both an opposition (docket no. 16) and reply (docket no. 19) were filed by the parties.  For the reasons discussed below, the Court GRANTS Dr. Jaderborg's motion for summary judgment.

**BACKGROUND**

The following statement of facts is based on declarations and documentary evidence submitted by the parties.  The facts are undisputed, unless otherwise noted.

**I.    Plaintiff's First Medical Visit to Sutter Coast Hospital**

On May 22, 2003 Plaintiff experienced severe abdominal pain and informed the unit floor officer that he needed to see a doctor immediately.  Plaintiff was escorted to the clinic, but no doctor was available.  The nurses who were present could not determine the source of Plaintiff's pain, so the medical staff decided to transfer Plaintiff to Sutter Coast Hospital, which is operated under a contract with the State of California.

At the hospital, Plaintiff was first examined by Dr. James Holmes.  Plaintiff explained that for the prior week he had been suffering from severe abdominal pain following meals accompanied by nausea and vomiting, and that the pain was becoming progressively worse.  After an initial examination, Dr. Holmes ordered several tests on Plaintiff, but was ultimately unable to determine the cause of Plaintiff's abdominal pain.  Dr. Holmes then referred Plaintiff's case to Dr. Jaderborg.

Following Plaintiff's description of his symptoms Dr. Jaderborg explained that the test results of Plaintiff's liver function test, x-ray and ultrasound were generally within normal limits.  When Plaintiff insisted that he was in extreme pain, Dr. Jaderborg decided to admit Plaintiff to the hospital overnight for observation.  According to Plaintiff, during the examination Dr. Jaderborg repeatedly said that she was very tired and only wanted to go to sleep.  Dr. Jaderborg ordered a CT scan of Plaintiff's abdomen and pelvis to be taken the next morning, and also ordered he be placed on pain medication with no food or drink throughout the night, in case surgery was necessary.  The pain medication significantly helped reduce Plaintiff's pain overnight. The next day, once the CT scan had been taken, Dr. Jaderborg informed Plaintiff that the test results were negative and that if he tolerated solid foods, he would be discharged back to the prison.  Later that afternoon, Plaintiff was given a meal and discharged from the

United States District Court

For the Northern District of California

2

1    hospital.

2    **II.     Dr. Jaderborg's Declaration**

3          In a signed declaration dated September 1, 2004, Dr. Jaderborg states, in relevant part:

4          I was called into the emergency department of Sutter Coast Hospital on May 22,
           2003, to examine plaintiff Richard Alderete, who had presented to the emergency
5          department with intermittent abdominal pain.

6          On examination I had difficulty in pinpointing the exact location of Mr. Alderete's pain,
           in part because his abdomen was completely nontender to palpation and he had
7          bowel sounds, but he insisted that his abdomen was still painful.  His white blood
           count was slightly elevated, a KUB x-ray was unremarkable, and a right upper
8          quadrant ultrasound was essentially normal.  I decided to admit Mr. Alderete to the
           hospital for observation to receive IV hydration.  I ordered a CT scan of his abdomen
9          and pelvis with IV and oral contrast for the next morning and ordered that he receive
           pain medication and no food or drink throughout the night, in case surgery was
10         necessary.

11         The CT scan of [Mr. Alderete's] abdomen and pelvis on May 23, 2003 was negative,
           showing no evidence of cholelithiasis (gallstones), cholecystitis (inflammation of the
12             gallbladder) or life threatening illness.

13         I examined Mr. Alderete at 3 p.m. on May 23, 2003.  He told me that he felt better
           and was having no more abdominal pain.  He was afrebrile, his vital signs were stable,
14         his abdomen was soft and nontender, and he had bowel sounds.  His white [blood] count
           was back to normal and his other blood parameters were within normal limits.  I
15         explained to Mr. Alderete that I had ordered, and received the results of those
           studies needed to rule out any condition that needed treatment at that time.  As he was
16         no longer in pain and was off narcotics, I told him that he would be fed and, that, if
           after eating he continued without pain it would be safe for him to be discharged.  I
17         advised Mr. Alderete that problems such as he had been experiencing sometimes
           clear on their own, but that if the pain returned, he would be returned to the hospital
18         for further care.  I ordered that he be fed with a soft, regular diet and instructed the
           nurses to let me know if he had any nausea or if he developed abdominal pain, but that
19         if he tolerated regular food he would be discharged.

20         At 5:00 p.m. the nurse charted that Mr. Alderete had tolerated his regular diet without
           pain.  He was discharged at 6:30 p.m.  I had no further contact with Mr. Alderete.
21
           At no time during my treatment of Mr. Alderete did I tell him that I was "tired and
22         just wanted to go to sleep", that "there were no other tests that could be done", or
           that "nothing could be done for his pain."
23

24   (Jaderborg Decl. in Supp. of Def.'s Mot. for Summ. J. ["Jaderborg Decl."] ¶¶ 1-7.)

25   **III.    Dr. Thomas Rydz Declaration**

26         Dr. Thomas Rydz is a board certified general surgeon and a fellow of the American Academy of

27   Surgeons.  (Rydz Decl. in Supp. of Def.'s Mot. for Summ. J. ["Rydz Decl."] ¶¶ 1.)  Dr. Rydz has been

28   in medical practice for the past fourteen years and is a member of the American College of Surgeons,

American Medical Association, California Medical Association and the Humboldt/Del Norte Medical Society. (*See* Rydz Decl., Exh. A.) Dr. Rydz reviewed Plaintiff's medical records from Sutter Coast Hospital on May 22 and May 23, 2003. (*Id.* at ¶ 2.) In a signed declaration dated August 3, 2004, Dr. Rydz states in relevant part:

> The facts and opinions regarding defendant Jana Jaderborg, M.D.'s care set forth in this declaration are based upon that review, as well as my academic and clinical training and experience as a general surgeon.

> Defendant Dr. Jaderborg first saw Richard Alderete when he was brought to the emergency room at Sutter Coast Hospital on May 22, 2003. Mr. Alderete was seen in the emergency department by emergency room physician Dr. Holmes. At that time, Mr. Alderete, a 38-year-old Hispanic male, was complaining of diffuse abdominal pain that usually began after eating, associated with nausea, but no vomiting. He had no fevers, acholic (absence of bile) stool or jaundice. He had a past history significant for hypertension, gout and hepatitis C. On physical exam, Mr. Alderete's temperature was 36.0, his pulse was 73 and his respiratory rate was 20, all within normal limits. Dr. Holmes examined Mr. Alderete's abdomen and described it as having "some mild tenderness in the upper abdomen." Mr. Alderete's white [blood cell] count was mildly elevated at 12,000 with 77 neutrophils. His liver function tests were normal and he had normal amylase. Dr. Holmes was uncertain of the etiology of Mr. Alderete's abdominal pain, and called Dr. Jaderborg to consult.

> Dr. Jaderborg came to the hospital and examined Mr. Alderete. On physical examination he was a "normally-developed, well-nourished male in no acute distress." She examined his abdomen and described it as being "nontender to palpation." Dr. Jaderborg ordered a right upper quadrant ultrasound, which showed a normal-appearing gallbladder with no ductal dilation or gallstones. Dr. Jaderborg's assessment was that Mr. Alderete had abdominal pain, which was diffuse and subjective, with an elevated white blood cell count. She admitted Mr. Alderete to the hospital for observation, with orders that he take nothing by mouth, and supported him with intravenous hydration, analgesia, antiemtics and a proton pump inhibitor. She also ordered a CT scan of the abdomen and pelvis to be done the morning of the next day to rule out any significant surgical disease.

> The next day, May 23, 2003, at 3:00 p.m. Mr. Alderete's pain was gone and his white [blood cell] count had decreased to 6100, which is within normal limits. The CT scan of the abdomen and pelvis had been accomplished and showed an essentially normal exam with no explanation for Mr. Alderete's symptoms, which had resolved. Dr. Jaderborg started Mr. Alderete on a regular diet and discharged him after he tolerated the diet without recurrence of his abdominal pain or nausea.

> Dr. Jaderborg evaluated Mr. Alderete in an appropriate time frame through the emergency room. Her physical exam of Mr. Alderete was thorough. The diagnostic studies that were ordered and obtained were appropriate. Mr. Alderete was given appropriate medications for his condition and the CT scan ordered provided a thorough assessment of the intraabdominal viscera to rule out any potentially dangerous conditions. Mr. Alderete's symptoms had resolved by the following day, as did his increased white [blood] cell count. He was appropriately considered to be stable for discharge at that time.

4

> Based on my review of the records, my education, and my experience as a general surgeon, it is my opinion that at all times Dr. Jaderborg's care of the patient was well within the standard of care for a general surgeon.

(Rydz Decl. in Supp. of Def.'s Mot. for Summ. J. [Ryzd Decl.] ¶¶ 1-7 [emphasis in original].)

**IV.    Plaintiff's Second Medical Visit to Sutter Coast Hospital**

Plaintiff continued to experience severe abdominal pain over the next five days, suffering from loss of appetite, sleep and occasional vomiting.  On May 28, 2003, Plaintiff was transferred again to the emergency department of Sutter Coast Hospital.  There, he was examined by Dr. George Isenhart.  Plaintiff described his symptoms and also informed Dr. Isenhart of his previous visit to the hospital earlier that week and the tests that had been run.[2]  Dr. Isenhart ordered a three-view abdominal series, which did not yield a diagnosis.  He decided to keep Plaintiff overnight for further tests.

On May 29, 2005, Plaintiff was examined by Dr. Robert Zedelis.  Dr. Zedelis conducted a CCK HIDA scan and based on the test results diagnosed Plaintiff with biliary dyskinesia.  Later that day, Dr. Thomas Polidore performed emergency surgery and removed Plaintiff's gall bladder.

**V.    Disputed Facts**

The following facts are disputed by the parties:

During the May 23, 2003 consultation, Dr. Jaderborg contends that Plaintiff told her he was no longer in pain.  (Jaderborg Decl. ¶ 5.)  Further, Dr. Jaderborg states that she advised Plaintiff that problems such as those he had experienced sometimes clear on their own, but, if the pain returned, he would be returned to the hospital for further care.  (*Id.*)

Plaintiff states that he never told Dr. Jaderborg he was no longer in pain and pleaded with Dr. Jaderborg to run further tests.  Furthermore, according to Plaintiff, Dr. Jaderborg refused, saying there were no other tests that could be done, and that there was nothing else she could do for Plaintiff's pain.  Plaintiff alleges Dr. Jaderborg acted with deliberate indifference to his serious medical needs because she refused to treat Plaintiff with essential medical care.

---

[2]  In his declaration Plaintiff stated Dr. Isenhart then said whoever told Plaintiff that nothing more could be done to help him probably didn't want to do anything else to help him.  Such evidence is inadmissable hearsay, and therefore the Court will not consider such evidence in support of Plaintiff's opposition.

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**<u>DISCUSSION</u>**

**I.    <u>Standard of Review</u>**

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and [that] the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits, which demonstrate the absence of a genuine issue of material fact. *See id.* at 323. When the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* Then, the nonmoving party must set forth specific facts showing the existence of a genuine issue of material fact. *Id.* at 324.

The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. *See TW Elec. Serv. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The evidence and the inferences to be drawn therefrom must be viewed in a light most favorable to the nonmoving party. *See id.* at 631.

It is not the task of the district court to scour the record in search of a genuine issue of triable fact. *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying with reasonable particularity the evidence that precludes summary judgment. *Id.* If the nonmoving party fails to do so, the district court may properly grant summary judgment in favor of the moving party. *See id.*; *see, e.g., Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1028-29 (9th Cir. 2001) (even if there is evidence in the court file which creates a genuine issue of material fact, a district court may grant summary judgment if the opposing papers do not include or

United States District Court

For the Northern District of California

1   conveniently refer to that evidence).  Although the district court has discretion to consider materials in

2   the court file not referenced in the opposing papers, it need not do so.  *Id.* at 1029.  "The district court

3   need not examine the entire file for evidence establishing a genuine issue of fact."  *Id.* at 1031.

4   **II.**     **Deliberate Indifference to Serious Medical Needs**

5          Plaintiff alleges that Dr. Jaderborg was deliberately indifferent to his serious medical needs by

6   deliberately taking an "easier less efficacious route" in diagnosing and treating Plaintiff's illness, biliary

7   dyskinesia.  By deliberately refusing to provide common medical treatment associated with his

8   symptoms, Plaintiff alleges Dr. Jaderborg caused actual injury to Plaintiff until Plaintiff's condition was

9   later corrected through emergency surgery.

10          Dr. Jaderborg contends that (1) she provided to Plaintiff the proper and appropriate care within

11   the standards of the general surgical community, and (2) Plaintiff's alleged damages were not the result

12   of any deliberate or negligent act or omission on the part of Dr. Jaderborg.

13          Deliberate indifference to serious medical needs violates the Eighth Amendment's prohibition

14   against cruel and unusual punishment.  *See Estelle v. Gamble,* 429 U.S. 97, 104 (1976); *McGuckin v.*

15   *Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds by WMX Technologies,*

16   *Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).  The analysis of a claim of "deliberate

17   indifference" to serious medical needs involves an examination of two elements: (1) the existence of a

18   prisoner's serious medical needs and (2) the establishment of a deliberately indifferent response by Dr.

19   Jaderborg to those needs.  *McGuckin*, 974 F.2d at 1059.

20          A serious medical need exists if the failure to treat a prisoner's condition could result in further

21   significant injury or the "unnecessary and wanton infliction of pain."  Id. (citing *Estelle*, 429 U.S. at

22   104).  The existence of an injury that a reasonable doctor or patient would find important and worthy of

23   comment or treatment; the presence of a medical condition that significantly affects an individual's daily

24   activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has

25   a serious need for medical treatment.  *Id.* at 1059-60 (citing *Wood v. Housewright*, 900 F.2d 1332,

26   1337-41 (9th Cir. 1990)).

27          A prison official is deliberately indifferent if he or she knows that a prisoner faces a substantial

28

United States District Court
For the Northern District of California

1   risk of serious harm and disregards that risk by failing to take reasonable steps to abate it.  *Farmer v.*

2   *Brennan*, 511 U.S. 825, 837 (1994).  The prison official must not only "be aware of facts from which

3   the inference could be drawn that a substantial risk of serious harm exists," but he "must also draw the

4   inference."  *Id.*  If a prison official should have been aware of the risk, but was not, then the official has

5   not violated the Eighth Amendment, no matter how severe the risk.  *Gibson v. County of Washoe*, 290

6   F.3d 1175, 1188 (9th Cir. 2002).

7          In order for deliberate indifference to be established, there must be a purposeful act or failure to

8   act on the part of the defendant and a resulting harm.  *McGuckin*, 974 F.2d at 1060; *Shapley v.*

9   *Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985).  Such indifference may

10  appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be

11  shown in the way in which prison officials provide medical care.  *See McGuckin*, 974, F.2d at 1062.

12  However, mere negligence or harassment related to medical problems is not enough to make out a

13  violation of the Eighth Amendment.  *See Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981);

14  *see also Toguchi v. Chung*, 391 F.3d 1051, 1060-61 (9th Cir. 2004).  Similarly, a showing of nothing

15  more than a difference of medical opinion as to the need to pursue one course of treatment over another

16  is insufficient, as a matter of law, to establish deliberate indifference.  *See Franklin*, 662 F.2d at 1344;

17  *see also Toguchi*, 391 F.3d at 1059-60; *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989);

18  *Mayfield v. Craven*, 433 F.2d 873, 874 (9th Cir. 1970).  In order to prevail on a claim involving

19  choices between alternative courses of treatment, a plaintiff must show that the course of treatment the

20  doctors chose was medically unacceptable under the circumstances and that they chose this course in

21  conscious disregard of an excessive risk to the plaintiff's health.  *See Toguchi*, 391 F.3d at 1058;

22  *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) (citing *Farmer*, 551 U.S. at 837), *cert.*

23  *denied*, 519 U.S. 1029 (1996).

24          **A.       The Existence of Plaintiff's Serious Medical Needs**

25          Plaintiff suffered from extreme abdominal pain that ultimately was diagnosed as biliary

26  dyskinesia.  This condition, however, was not diagnosed during Plaintiff's initial visit to the hospital.  As

27  a result of the missed diagnosis, Plaintiff suffered continued extreme pain that significantly affected his

28

United States District Court

For the Northern District of California

daily activities.  According to Plaintiff, he suffered from loss of appetite, sleep and occasional vomiting after his treatment from Dr. Jaderborg.  Plaintiff ultimately required emergency surgery to effectively treat his condition.  Therefore, for purposes of his Eight Amendment claim, the Court finds that Plaintiff has established a serious medical need.

> **B.**     **The Establishment of a Deliberately Indifferent Response by Dr. Jaderborg to Plaintiff's Serious Medical Needs**

Even if Dr. Jaderborg knew of the existence of Plaintiff's serious medical needs, Dr. Jaderborg was deliberately indifferent only if she knew that Plaintiff was facing a substantial risk of serious harm and then disregarded that risk by failing to take reasonable steps to abate it.  *See Farmer*, 511 U.S. at 837.

Mere negligence or harassment related to medical problems is not enough to make out a violation of the Eighth Amendment.  *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981); *Anthony v. Dowdle*, 853 F.2d 741, 743 (9th Cir. 1988).  An accident or mistake by a doctor, although it may produce added anguish, is not on that basis alone to be characterized as wanton infliction of unnecessary pain sufficient to demonstrate deliberate indifference.  *McGuckin*, 974 F.2d at 1060.

Plaintiff alleges that Dr. Jaderborg acted with deliberate indifference because she knew that there were additional tests that could be conducted to diagnose Plaintiff's condition, but failed to conduct those tests.  Dr. Jaderborg contends the medical care Plaintiff received was appropriate.

Plaintiff was examined by Dr. Holmes who could not determine the cause of Plaintiff's pain.  X-rays were taken which did not yield a diagnosis.  Upon her physical examination of Plaintiff, Dr. Jaderborg noted Plaintiff's abdomen was "completely nontender to palpation."  She then ordered an ultrasound of Plaintiff's right upper quadrant, which results were essentially normal.  (Jaderborg Decl. ¶ 3.)  She admitted Plaintiff to the hospital overnight for observation, during which time Dr. Jaderborg prescribed pain medication and intravenous fluids for Plaintiff.  Plaintiff admits the pain medication significantly ameliorated his discomfort.  The following morning a CT scan was conducted of Plaintiff's abdomen and pelvic area which also resulted in normal findings.  Dr. Jaderborg informed the Plaintiff that if he tolerated solid food without pain, he would be returned to the prison.  As noted above, Dr. Rydz opined that Dr. Jaderborg evaluated Plaintiff in an appropriate time frame, that her physical exam

was thorough, the diagnostic studies ordered were appropriate, and the CT scan ordered provided a thorough assessment of the intraabdominal viscera to rule out any potentially dangerous conditions.

Plaintiff presents no evidence indicating that Dr. Jaderborg knew Plaintiff was suffering from biliary dyskinesia.  Plaintiff contends Dr. Jaderborg told him nothing more could be done for his pain and no further tests could be run.  Dr. Jaderborg denies ever making those statements.  Nevertheless, this factual dispute is not a material one with respect to Plaintiff's Eighth Amendment claim against Dr. Jaderborg, for even when Plaintiff's allegations are viewed in the light most favorable to him, the Court finds that he has failed to establish Dr. Jaderborg acted with deliberate indifference to his serious medical needs.  *See Reynolds v. County of San Diego*, 84 F.3d 1162, 1168-70 (9th Cir. 1996) *overruled on other grounds by Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1000 (9th Cir. 1997) (questions of fact regarding immaterial issues cannot defeat a motion for summary judgment).

Dr. Jaderborg based her medical opinion on the facts then available to her, including the evidence that all of the tests run on Plaintiff were normal.  In fact, according to Plaintiff, Dr. Jaderborg informed him that those tests had ruled out any life threatening illness.  Therefore, there is no evidence that Dr. Jaderborg knew that Plaintiff had a serious medical need such that additional tests needed to be run.  While it is undisputed that Plaintiff suffered pain during the intervening week between Dr. Jaderborg's treatment and his ultimate surgery, the facts he presents, even when taken as true, cannot support a finding of deliberate indifference to his serious medical needs by Dr. Jaderborg in violation of the Eighth Amendment.  At best, Plaintiff has alleged facts that may amount to negligence or medical malpractice, that Dr. Jaderborg should have diagnosed Plaintiff's condition.  State law claims for negligence or medical malpractice, however, do not amount to a constitutional violation and must be brought against proper defendants in state court.  That is not enough to constitute an Eight Amendment claim for deliberate indifference.

The Court has considered the materials submitted in support of and in opposition to summary judgment[3] and concludes that, even when the Court views all facts in the light most favorable to Plaintiff,

_____

[3]  Dr. Jaderborg filed evidentiary objections to Plaintiff's opposition to the motion for summary judgment.  Dr. Jaderborg objected to Plaintiff's Exhibits D, E, F, and G which are documents concerning various conditions of the gall bladder, such as gallstones and gall bladder disease.  Dr. Jaderborg argues

1   no reasonably jury could return a verdict for him and against Dr. Jaderborg.  No genuine and disputed

2   issues of material fact remain, therefore, Dr. Jaderborg is entitled to prevail as a matter of law on

3   Plaintiff's deliberate indifference claim.  *Celotex*, 477 U.S. at 322-23.

4                                          <u>**CONCLUSION**</u>

5          In light of the foregoing, Dr. Jaderborg's motion for summary judgment is GRANTED (docket

6   no. 12).  The Clerk of the Court shall enter judgment in favor of Dr. Jaderborg, terminate any other

7   pending motions and close the file.

8          IT IS SO ORDERED.

9   DATED: September 30, 2005                    _____
                                                 *Saundra B Armstrong*
10                                               SAUNDRA BROWN ARMSTRONG
                                                 United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

_____

27   that these documents are inadmissible hearsay and so cannot be used to support Plaintiff's opposition.
     However, even were the Court to consider these exhibits, Plaintiff still had not raised a genuine issue of
28   material fact.  Consequently, this Court DENIES Defendant's evidentiary objections as moot.

11